UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

AUTUMN WIND LENDING, LLC                                                              Plaintiff

v.                                                                        Civil Action No. 3:22-cv-255-RGJ

JOHN J. SIEGEL, *et al.*                                                              Defendants

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

    Defendants Cecelia Financial Management, LLC ("Cecelia"), Halas Energy, LLC ("Halas"), and Oasis Aviation LLC ("Oasis" together with Cecelia and Halas, "Defendants") moved to dismiss the First Amended Complaint ("Complaint"). [DE 39]. Plaintiff Autumn Wind Lending, LLC ("AWL") responded [DE 41] and Defendants replied [DE 44]. Defendants moved to refer this case to the United States Bankruptcy Court for the Western District of Kentucky [DE 40 at 230] and AWL responded in opposition [DE 43]. Defendants failed to reply and the time for doing so has passed. Briefing is complete, and the matter is ripe. For the reasons below, Defendants' Joint Motion to Dismiss [DE 39] is **DENIED** and Defendants' Motion to Refer Case to Bankruptcy Court [DE 40] is **DENIED**.

### I.    BACKGROUND

    Non-party Insight Terminal Solutions ("ITS") was a non-operating entity with a single potential asset—a sublease to develop and operate a rail terminal in the Port of Oakland in Oakland, California ("Sublease"). [DE 24 at 321]. Insight Terminal Holdings ("ITH") owned 100% of the membership interest in ITS. [*Id.*]. John J. Siegel, ("Siegel") managed ITS and Defendants Cecelia, Halas, and Oasis. [*Id.* at 319]. On September 24, 2018, AWL, ITS, and ITH entered into a Loan and Security Agreement, pursuant to which ITS, as borrower, ITH, as

guarantor, and AWL, as lender, entered an agreement for AWL to provide ITS a senior secured term loan facility in a principal amount up to $6,800,000. [DE 24-2 ("Initial Term Loan")].

Under the Initial Term Loan, ITS represented that it did not have any existing indebtedness. [24-2 at 355]. The Initial Term Loan defined "Indebtedness" as

> all obligations for borrowed money of any kind or nature, including funded debt and unfunded liabilities; contingent obligations under guaranties or letters of credit; and all obligations for the acquisition or use of any fixed asset, including capitalized leases, or improvements which are payable over a period longer than one year, regardless of the term thereof or the Person or Persons to whom the same is payable, and the Obligations; provided that "Indebtedness" shall not include surety bonds or performance bonds or other obligations of a like nature incurred in the Borrower's ordinary course of business as currently conducted.

[*Id.* at 343]. ITS also covenanted not to incur any additional indebtedness so long as the Initial Term Loan was still outstanding unless it first obtained written consent from AWL. [*Id.* at 363]. Failure to comply with the indebtedness covenant was an event of default. [*Id.* at 367–68]. The maturity date on the Initial Term Loan was December 31, 2019. [DE 24 at 324].

On December 19, 2018, AWL entered into the First Amendment to Loan and Security Agreement with ITS and ITH to amend the Initial Term Loan. [DE 24-4 ("First Amendment")]. The First Amendment included an additional term loan to ITS in the amount of $300,000 (together with the Initial Term Loan, the "Term Loan"). [*Id.* at 389]. The maturity date on the Term Loan was shortened to June 30, 2019. [DE 24-6 at 406].

On July 17, 2019, ITS and ITH each commenced a voluntary case under chapter 11 of the Bankruptcy Code, which are being administered jointly in the U.S. Bankruptcy Court for the Western District of Kentucky and captioned *In re Insight Terminal Solutions, LLC, et al.*, Case No. 19-32231 ("Bankruptcy Action"). On July 29, 2020, Cecelia filed a proof of claim ("Cecelia Claim") in the Bankruptcy Action seeking $6,044,190.20 for "money loaned." [DE 24-7]. On November 16, 2020, Halas filed a proof of claim in the Bankruptcy Action ("Halas Claim") in the

asserted general unsecured amount of $37,828.57. [DE 24-8]. On the same date, Oasis filed a proof of claim ("Oasis Claim") in the Bankruptcy Action in the asserted general unsecured amount of $6,737.74. [DE 24-9]. The Cecelia Claim, Halas Claim, and Oasis Claim were all executed by Siegel. [DE 24 at 327–30].

On November 3, 2020, the Bankruptcy Court entered an order approving and confirming AWL's Chapter 11 Plan of Reorganization. [DE 39-1 ("Plan")]. AWL filed a proof of claim in the amount of $14,869,623.62. [DE 39-3]. The Plan classified AWL's claim as a Class 2, Prepetition Lender Claim. [DE 39-1 at 87, 90]. AWL's Prepetition Lender Claim included any Claim, as defined in the Plan, arising under the Term Loan. [*Id.* at 87]. As part of the Plan, AWL's Prepetition Lender Claim was fully satisfied and discharged. [*Id.* at 91 ("[AWL] shall receive, in exchange for full and final satisfaction, settlement, release, and discharge of its Prepetition Lender Claim, 100 Units of New Membership Interests in the Reorganized Debtor on the Effective Date[.]")].

On April 12, 2021, ITS filed an adversary proceeding, *Insight Terminal Solutions, LLC v. Cecelia Financial Management, LLC, et al.*, Case No. 21-03013-jal ("Adversary Proceeding") against Cecelia, Halas, and Oasis seeking to recharacterize as equity interest, disallow and expunge, and/or equitably subordinate the Halas Claim, Oasis Claim, and Cecelia Claim and seeking damages against Siegel. [DE 24 at 330–31]. As part of the Adversary Proceeding, AWL initially pursued claims for equitable subordination, fraud, and tortious interference with contract premised on the Term Loan. [*Id.* at 331]. However, the parties agreed to dismiss those claims without prejudice. [*Id.*].

On February 14, 2022, AWL filed a two-count Complaint against Defendants and Siegel. [DE 1]. AWL alleges in Count I that Siegel committed fraud in executing the Initial Term Loan

3

and later violating the Term Loan's indebtedness covenant. [DE 24 at 331]. AWL further alleges that Siegel materially misrepresented the state of ITS's indebtedness and omitted ITS's violation of the indebtedness covenant under the Term Loan. [*Id.*]. In Count II, AWL alleges tortious interference by all Defendants, including Siegel, by intentionally interfering with ITS's obligations under the Term Loan. [*Id.* at 333]. Defendants have moved to dismiss this action [DE 39] and refer it to the Bankruptcy Court [DE 40].

## II. MOTION TO REFER CASE TO BANKRUPTCY COURT [DE 40]

Defendants argue that this case should be referred to the United States Bankruptcy Court for the Western district of Kentucky because this matter is related to the Bankruptcy Action and because the allegations in the Complaint mirror those raised in the Adversary Proceeding. [DE 40 at 230]. AWL contends that this case does not relate to the Bankruptcy Action. [DE 43 at 297]. It further argues that its fraud and tortious interference claims do not mirror the recharacterization and disallowance claims raised in the Adversary Proceeding. [*Id.*].

### A. Standard

A district court may refer a case arising in or related to a case under Title 11 of the United States Code to the bankruptcy judges for the district. 28 U.S.C. § 157(a). "[A] district court cannot refer a case to the bankruptcy court unless it has bankruptcy jurisdiction under 28 U.S.C. § 1334(b)." *SWM Props. Inc. v. Androla*, No. 3:17-CV-00271-TBR, 2017 WL 4553412, at *2 (W.D. Ky. Oct. 12, 2017) (citing *Sanders Confectionary Prods, Inc.*, 973 F.2d 474, 482–83 (6th Cir. 1992)). If the district court has bankruptcy jurisdiction under § 1334(b), then, in the Western District of Kentucky, the case is to be referred to a bankruptcy judge to decide whether a proceeding is a "core" or "noncore" proceeding. *See Tomassi v. MDS, Inc.*, No. 5:12-CV-201-TBR, 2013 WL 1636435, at *2 (W.D. Ky. 2013). Thus, the only question for the Court to decide

4

is whether it "has bankruptcy jurisdiction under Section 1334(b) required to refer the case to the Bankruptcy Court." *SWM Props. Inc.*, 2017 WL 4553412, at *2.

To determine whether a court has bankruptcy jurisdiction pursuant to § 1334(b), the Sixth Circuit has held that "it is necessary only to determine whether a matter is at least 'related to' the bankruptcy." *Mich. Emp't Sec. Comm'n v. Wolverine Radio Co.* (*In re Wolverine Radio Co.*), 930 F.2d 1132, 1141 (6th Cir. 1991). The Sixth Circuit has adopted the expansive definition of a "related to" proceeding first articulated by the Third Circuit in *Pacor, Inc. v. Higgins* (*In re Pacor*). *See Wolverine Radio Co.*, 930 F.2d at 1142. Non-core "related to" jurisdiction is the broadest type of bankruptcy jurisdiction. *See Donaldson v. Bernstein*, 104 F.3d 547, 552 (3d Cir. 1997). But, in the context of Chapter 11, "bankruptcy court jurisdiction 'is sharply reduced following confirmation.'" *Cunningham v. Pension Ben. Guar. Corp.*, 235 B.R. 609, 617 (N.D. Ohio 1999) (quoting *In re Spiers Graff Spiers*, 190 B.R. 1001, 1007 (Bankr. N.D. Ill. 1996)). This is because the *Pacor* analysis will not extend bankruptcy jurisdiction to a dispute between non-debtors unless the dispute creates "the logical possibility that the estate will be affected." *In re Federal–Mogul Global, Inc.,* 300 F.3d 368, 380 (3d Cir. 2002) (internal quotations omitted), *cert. denied*, 537 U.S. 1148 (2003).

Post-confirmation, the Sixth Circuit has interpreted the "related to" inquiry to ask "whether there is a nexus between the other proceeding and the *bankruptcy case*." *In re Greektown Holdings, LLC*, 728 F.3d 567, 578 (6th Cir. 2013) (emphasis in original). In doing so, the Sixth Circuit adopted the approach articulated in *Feld v. Zale Corporation (Matter of Zale Corporation),* 62 F.3d 746 (5th Cir. 1995). *See In re Greektown Holdings, LLC*, 728 F.3d at 578. In *Feld*, the Fifth Circuit asked whether the outcome of the actions at issue would affect the bankruptcy estate. *See* 62 F.3d at 755–59. When it found that the outcome of those actions would not affect the

5

bankruptcy estate, the Fifth Circuit declined to extend bankruptcy jurisdiction. *See id.* at 755–57. The Sixth Circuit ultimately adopted this approach. *See In re Greektown Holdings, LLC*, 728 F.3d at 578.

### B. Analysis

Defendants contend that the parties, facts, and circumstances in this case are related to the Bankruptcy Action and the Adversary Proceeding, which would confer bankruptcy jurisdiction pursuant to 28 U.S.C. § 157. [DE 40 at 232]. In response, AWL points to several factors—discussed in further detail below—indicating that this case is not related to the Bankruptcy Action. [DE 43 at 304].

Courts in the Sixth Circuit have held that "state law claim[s] between unrelated third parties, which would have no impact on the estate" do not meet the standard for "related to" jurisdiction. *In re K & R Min., Inc.*, 135 B.R. 269, 271 (Bankr. N.D. Ohio 1991). Courts have similarly declined to extend bankruptcy jurisdiction to disputes between third-party non-debtors. *Cunningham*, 235 B.R. at 615–16 ("Although the plaintiffs' claims may arise out of facts surrounding the bankruptcy, the plaintiffs' claims in the adversary case are against third-party non-debtors.").

Here, the reorganized debtor, ITS, is not a party to this proceeding, and AWL asserts no claims against ITS. [DE 24]. Nor does AWL assert any claims on behalf of ITS that could contribute to the estate. [*Id.*]. Although AWL is the new owner of ITS, the Court will not disregard the corporate separateness and treat AWL's claims as if they were asserted by ITS. Similarly, Defendants and Siegel are non-debtors that are separate entities from ITS. [*Id.* at 319]. This is a dispute between unrelated third parties. *In re K & R Min., Inc.*, 135 B.R. at 271. Although the facts of this case may arise out of the facts surrounding the Bankruptcy Action, disputes between

6

third-party non-debtors are unlikely to create "related to" jurisdiction. *Cunningham*, 235 B.R. at 615–16.  Moreover, AWL seeks to recover under state law for fraud and tortious interference, which is "distinct from the bankruptcy case." *Id.* at 616.

Based on these facts, the Court finds that there is no nexus between AWL's claims and the Bankruptcy Action. *See In re Greektown Holdings, LLC*, 728 F.3d at 578.  There is no indication that the outcome of this case would affect the bankruptcy estate. *See id.*  Therefore, there is no "related to" jurisdiction under § 1334(b). *See Wolverine Radio Co.* (*In re Wolverine Radio Co.*), 930 F.2d at 1141.  Defendants contend that the Bankruptcy Court is the proper venue due to the extensive discovery conducted in the Adversary Proceeding and the Bankruptcy Court's familiarity with the facts. [DE 40 at 231].  However, judicial economy is not enough to confer bankruptcy jurisdiction where it does not already exist.  Defendants' Motion to Refer Case to Bankruptcy Court [DE 40] is **DENIED**.

### III. DEFENDANTS' JOINT MOTION TO DISMISS [DE 39]

Defendants argue that AWL's claims are barred by res judicata. [DE 39 at 34].  Defendants also argue that they have been release from liability under the Plan. [*Id.* at 35].  In response, AWL contends that Defendants failed to properly plead a defense based on res judicata. [DE 41 at 243].  They also argue that releases in the Plan are inapplicable to Defendants. [*Id.* at 41].

#### A. Standard

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]"  To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  As stated, when considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable

7

inferences in favor of the non-moving party. *See Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. Of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

**B. Res Judicata**

Defendants first argue that AWL's claims are barred by res judicata. [DE 39 at 34]. AWL contends that Defendants failed to properly plead a defense based on res judicata. [DE 41 at 243].

"The party asserting the defense of res judicata bears the burden of proof." *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir. 2008). Res judicata consists of four elements:

1. A final decision on the merits in the first action by a court of competent jurisdiction;

2. The second action involves the same parties, or their privies, as the first;

    3. The second action raises an issue actually litigated or which should have been litigated in the first action;

    4. An identity of the causes of action.

*Sanders Confectionery Prod., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992). "Confirmation of a plan of reorganization by the bankruptcy court has the effect of a judgment by the district court and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings." *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 458, 463 (6th Cir. 1991).

    Defendants contend that AWL now seeks to recover the same obligations that were paid and satisfied under the Plan. [DE 44 at 480]. Defendants note that AWL's Prepetition Lender Claim, which was satisfied under the Plan, includes all "Obligations" as defined in the Initial Term Loan. [DE 39 at 32–33]. Defendants argue that the definition of "Obligations" under the Initial Term Loan includes the claims AWL now assert against Defendants. [*Id.*]. The Initial Term Loan defines "Obligations" as

> all loans (including the Loan), debts, liabilities, obligations, covenants and duties *owing by the Borrower to the Lender or any Affiliate of the Lender* of any kind or nature, present or future, whether or not evidenced by any note, guaranty or other instrument, arising under this Agreement, or any of the other Loan Documents or under any other agreement or by operation of law, whether or not for the payment of money, whether arising by reason of an extension of credit, opening, guaranteeing or confirming of a letter of credit, loan, guaranty, indemnification or in any other manner, whether direct or indirect (including those acquired by purchase or assignment), absolute or contingent, due or to become due, now due or hereafter arising and howsoever acquired including, without limitation, all interest, charges, expenses, fees (including the Exit Fee), commitment, facility, collateral management or other fees, attorneys' fees and expenses, consulting fees and expenses and any other sum chargeable to the Borrower under this Agreement, or any of the other Loan Documents.

[DE 24-2 at 345 (emphasis added)]. Although the Initial Term Loan defines "Obligations" broadly, the provision is referring to obligations between the borrower, ITS, and the lender, AWL.

[*Id.*]. While all obligations between AWL and ITS would have been satisfied by the Plan [DE 39-1 at 91], there is no indication that this includes causes of action by AWL against third parties. This Court has held that a tortious interference claim is based on an independent legal duty and that parties can bring both breach of contract and tortious interference claims. *See Francis v. Armstrong Coal Rsrvs., Inc.*, No. 4:11-CV-00077-JMH, 2012 WL 777271, at *5 (W.D. Ky. Mar. 7, 2012). As noted above, the Court will not disregard the corporate separateness between AWL and ITS or ITS and Defendants.

Defendants also argue that AWL is asserting the same obligation against Defendants as was satisfied against ITS because the value of the claims is the same. [DE 44 at 480–81]. The Sixth Circuit has long held that a creditor may only satisfy its claims once. *See In re Ransford*, 194 F. 658, 663 (6th Cir. 1912). However, Defendants have cited no law holding that claims against separate parties must be the same simply because the value of damages is similar. While AWL's claim against ITS for breach of the Term Loan may be satisfied, see *In re Ransford*, 194 F. at 663, there is no indication that this also satisfied AWL's claims for fraud and tortious interference against Defendants. The Court cannot find that "Obligations," as defined in the Initial Term Loan, includes AWL's claims against Defendants in this action based on the plain language of the agreement.

Based on the foregoing, Defendants' res judicata defense must fail. Defendants satisfy the first element because the Bankruptcy Court's confirmation order constitutes a final judgment. *See Sanders Confectionery Prod., Inc.*, 973 F.2d at 480. Defendants also satisfy the second elements because all parties to this case were parties to the Bankruptcy Action. *See id.* It is undisputed that AWL, Siegel, and Defendants were all creditors of ITS in the Bankruptcy Action. In a bankruptcy case, creditors are considered parties for the purposes of res judicata. *See Akins v. U.S. Bank, Nat'l*

*Ass'n*, No. 18-2725, 2019 WL 1495300, at *5 (W.D. Tenn. Apr. 4, 2019). Because Siegel controlled Defendants, he would also be considered in privity with the parties. *See id.* However, Defendants cannot meet their burden for the third or fourth elements. *Winget*, 537 F.3d at 572. The Court has found that AWL's claims against Defendants and Siegel in this action are different from the obligations that were satisfied under the Plan. AWL's claims for fraud and tortious interference are separate and apart from those asserted in the Bankruptcy Action. Defendants cannot prove the third or fourth elements of res judicata. *See Sanders Confectionery Prod., Inc.*, 973 F.2d at 480. Accordingly, AWL's claims are not barred by res judicata.

### C. Releases

Defendants argue that they have been released from liability due to confirmation of the Plan and satisfaction of their AWL's claims. [DE 39]. AWLS contends that Defendants were not explicitly or implicitly released of liability because its claims against them were not satisfied. [DE 41 at 245].

The Plan defines "Released Parties" as "collectively, and in each case solely in their capacities as such: (a) the Reorganized Debtor; and the Prepetition Lender[.]" [DE 39-1 at 87]. In this instance, the Plan is referring to ITS and AWL, respectively. [*Id.*]. It does not refer to Siegel or Defendants as released parties. [*Id.*]. Instead, Defendants rely on their theory that the Plan satisfied all "Obligations" related to the Initial Term Loan, including AWL's claims against them in this action. [DE 39 at 35]. However, because the Court has held that AWL's claims against Siegel and Defendants were not satisfied as part of the Plan, there is no basis to release them from liability as they claim.

Reviewing the facts in the light most favorable to the nonmoving party, AWL has stated claims for fraud and tortious interference that are plausible on their face. *Twombly*, 550 U.S. 544,

570. The Court notes that Defendants did not move to dismiss on the merits on AWL's claims. Therefore, the Court will not analyze them on their merits. For these reasons, Defendants' Joint Motion to Dismiss [DE 39] is **DENIED**.

## IV. <u>CONCLUSION</u>

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS** that:

1. Defendants' Joint Motion to Dismiss [DE 39] is **DENIED**; and

2. Defendants' Motion to Refer Case to Bankruptcy Court [DE 40] is **DENIED**.

*Rebecca Grady Jennings, District Judge*
United States District Court

January 10, 2023