UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

AUTUMN WIND LENDING, LLC                                               Plaintiff

v.                                                   Civil Action No. 3:22-cv-255-RGJ-RSE

JOHN J. SIEGEL, *et al.*                                              Defendants

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

Plaintiff Autumn Wind Lending, LLC ("Autumn Wind") moves for default judgment against all Defendants. [DE 98]. Defendants John J. Siegel ("Siegel") and Cecelia Financial Management, LLC, Halas Energy, LLC, and Oasis Aviation LLC (collectively, the "Company Defendants") failed to respond. For the following reasons, Autumn Wind's motion for default judgment [DE 98] is **GRANTED**; however, the Court requires more information as to Autumn Wind's interest, attorney's fees and costs and will withhold final default judgment until receiving supplementary information.

**I.      BACKGROUND**

According to the amended complaint, nonparty Insight Terminal Solutions, LLC ("Insight") defaulted on its obligations to Autumn Wind. [DE 24 at 321–25]. According to Autumn Wind's amended complaint, Insight was a "non-operating business" with "a sublease to develop and operate a rail terminal in the Port of Oakland." [DE 24 at 321]. Autumn Wind issued a $6,800,000 loan to Insight. [*Id.*]. Insight also executed a $3,400,000 unsecured promissory note. [*Id.* at 324]. Later, Autumn issued an additional $300,000 loan to Insight. [*Id.* at 325]. Siegel managed Insight. [*Id.* at 318]. In the loan agreement, Insight represented to Autumn Wind that it had no existing debts and agreed not to incur any additional debt while the loan was outstanding.

[*Id.* at 318]. However, "pursuant to Siegel's direction and control," Insight "breached both covenants" by having and taking on obligations to other "Siegel-affiliated" entities. [*Id.* at 319]. Those entities were the Company Defendants.

Insight failed to repay Autumn Wind and, shortly thereafter, filed for bankruptcy in this District. [*Id.* at 326]; *see also* Chapter 11 Voluntary Petition, *In re Insight Terminal Solutions, LLC*, No. 19-32231-jal (Bankr. W.D. Ky. Jul. 17, 2019), ECF No. 1. The Company Defendants filed proofs of claim against Insight in the bankruptcy action. [DE 24 at 327–30]. Autumn Wind submitted a Chapter 11 plan of reorganization, which the court accepted, rendering Insight a wholly owned subsidiary of Autumn Wind. [*Id.* at 330]. Then Insight filed an adversary complaint which, in part, asserted a claim against Siegel and the Company Defendants for equitable subordination, fraud, breach, and tortious interference. [*Id.* at 331]. The claim was "premised on[] the material misrepresentations" in Autumn Wind's loan to Insight. [*Id.*]. The parties in the bankruptcy matter eventually stipulated to the dismissal of the claim. [*Id.*].

Autumn Wind initiated this case in the Southern District of New York. [DE 1]. Siegel and the Company Defendants waived service. [DEs 13–16]. The original complaint asserted claims against Siegel and the Company Defendants. [*Id.*]. With the case pending, Siegel deceased. [DE 18; DE 69]. Autumn Wind then tendered an amended complaint naming in Siegel's place the future executor or personal representative of his estate. [DE 24]. Autumn Wind maintains claims of (I) fraud against Siegel and (II) tortious interference against both Siegel and the Company Defendants. [*Id.* at 331–33]. By agreement of the parties, the case was transferred to this District in May 2022. [DE 26]. This Court initially denied the Company Defendants' Rule 12(b)(6) motion to dismiss, but their motion to reconsider was granted. [DE 62]. However, the Sixth Circuit reversed, holding

that Insight's voluntarily dismissed claim in the bankruptcy action did not preclude Autumn Wind's claims in this case. [DE 66 at 1098–102].

Soon after remand, counsel for the Company Defendants moved to withdraw. [DE 69; DE 70; DE 71]. Counsel represented that Siegel had been there "exclusive point of contact" for the Company Defendants; that in light of his death, the Company Defendants had "new managers"; and that counsel, despite their efforts, had essentially lost contact with the Company Defendants. [DE 69 at 1112–13]. The Court granted their motions and afforded the Company Defendants 45 days to retain new counsel. [DE 81]. When they did not retain counsel as required by law, the Court set a show-cause hearing. [DE 89]. And when no one appeared on the Company Defendants' behalf for that hearing, the Court permitted Autumn Wind to seek default judgment. [DE 91]. In the order from the show cause hearing the Court specifically stated:

> The undersigned indicated on the record the Corporate Defendants' continued failure to retain counsel as required for corporate entities in federal court. Mr. King stated that he has not had any communications with the Corporate Defendants or any representative on their behalf. Mr. King also noted that the individual defendant in the case, John J. Siegel ("Siegel"), passed away in 2023. The Court notes that neither Siegel, nor, "John Doe as Executor or Personal Representative of the Estate of John J. Siegel, deceased" has ever retained counsel in this case.
>
> Because the Corporate Defendants have had over two months to retain new counsel but have not done so, have not shown cause for such failure, and have not otherwise communicated with opposing counsel or the Court in this case, *the Court directs Plaintiff to move forward with filing motions for default judgment.*

[DE 91 at 1170 (emphasis added)]. This order was served by CMECF as well as on all the following in the manners provided in the order.

Counsel of Record

Robert M. Hirsh
Norton Rose Fulbright US LLP
1301 6th Ave.
New York, NY 10019
robert.hirsh@nortonrosefulbright.com

John J. Siegel III
19 Daintree Drive
Seaford Rise, SA 5169
AUSTRALIA
jjsiegs@hotmail.com

Kate Burton
295 North Hubbards Lane, Suite 302
Louisville, KY 40207
kburton@ironsenergy.com

Sharon Siegel
colesmom33@hotmail.com

Cecelia Financial Management, LLC
c/o Kevin Greene, Reg. Agent
3402 SW 26th Ter. B11
Fort Lauderdale, FL 33312

Caleb Investments, LLC
c/o Howard S. Sturm, Reg. Agent
713 East Market Street, Suite 100
Louisville, KY 40202

Halas Energy LLC
c/o Ky. Secy. of State
700 Capital Avenue
Frankfort, KY 40601

[*Id.* at 1171].

On July 18, 2024, as requested by the Magistrate Judge, Autumn Wind moved for entry of default from the Clerk of Court. [DE 92]. The motion for default judgment was denied without prejudice for failure to first obtain an entry of default. [DE 94]. Thereafter, Autumn Wind sought

[DE 95] and obtained from the Clerk of Court [DE 97] an entry of default as to all defendants. Now Autumn Wind moves for default judgment. [DE 98].

## II. STANDARD

Under Federal Rule of Civil Procedure 55(b), a district court may enter a judgment of default against a defendant who fails to plead or otherwise defend against an action. To obtain a judgment by default, the moving party must first request that the Clerk of the Court enter a default under Fed. R. Civ. P. 55(a). *See Ramada Franchise Sys., Inc. v. Baroda Enterprises, LLC*, 220 F.R.D. 303, 305 (N.D. Ohio 2004) ("Entry of a default . . . is a prerequisite to entry of a default judgment under Rule 55(b).") (internal citation omitted).

Once the clerk has entered default, the Court must accept all well-pleaded allegations in the complaint as true. *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007) (citing *Harmon v. CSX Transp.*, 110 F.3d 364, 368 (6th Cir. 1997)) (noting that entry of default judgment "conclusively establishes every factual predicate of a claim for relief"); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Based on the factual predicate in the complaint, the Court must then "examine the sufficiency of plaintiff's allegations to determine whether the plaintiff is entitled to" a default judgment. *Fifth Third Bank v. Canfield*, No. 3:14-CV-00300-CRS, 2014 WL 3853464, at *2 (W.D. Ky. Aug. 5, 2014) (citing *PNC Bank, N.A. v. Starlight Props. & Holdings, LLC*, No. 6:13–CV–408–ORL, 2014 WL 2574040, at *5 (M.D. Fla. June 9, 2014)). The allegations are sufficient "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of

action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (internal citation and quotation omitted).

"[T]he decision to grant a default judgment is within the Court's discretion." *AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 929 (W.D. Mich. 2013) (citations omitted). Factors considered in determining whether to enter a default judgment include: "[1] the amount of money potentially involved; [2] whether material issues of fact or issues of substantial public importance are at issue; [3] whether the default is largely technical; [4] whether plaintiff has been substantially prejudiced by the delay involved; [5] and whether the grounds for default are clearly established or are in doubt." *J & J Sports Prods., Inc. v. Camacho*, No. 3:16-CV-00141-TBR, 2017 WL 2389409, at *2 (W.D. Ky. June 1, 2017).

"A default judgment on well-pleaded allegations establishes only defendant's liability; plaintiff must still establish the extent of damages." *Kelley v. Carr*, 567 F. Supp. 831, 841 (W.D. Mich. 1983). As a result, when moving for a default judgment, the plaintiff must prove its entitlement to the amount of monetary damages requested. But a court will not simply accept a plaintiff's statement of damages. *See Malibu Media, LLC v. Schelling*, 31 F. Supp. 3d 910, 911 (E.D. Mich. 2014) ("But the Court is not free to enter judgment in the amount requested by the plaintiff."). Rather, "[t]he Court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Priority Insulation v. Triple Crown Fin. Grp., Inc.*, No. 1:05CV563, 2006 WL 1529330, at *3 (S.D. Ohio June 5, 2006) (citing *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 111 (6th Cir. 1995)).

Rule 55(b) authorizes the court to "conduct hearings or make referrals" in order "to determine the amount of damages[,] establish the truth of any allegation by evidence[,] or investigate any other matter." Fed. R. Civ. P. 55(b)(2)(B). The court may also rely on affidavits

6

and other documentary evidence to determine the appropriate damages amount. *See Hart v. Estes*, No. 3:17CV-317-CRS, 2018 WL 1914295, at *2 (W.D. Ky. Apr. 23, 2018) ("The court, in its discretion, need not hold a hearing on the motion, but may determine on the filings that default judgment on the claims is proper, and may fix damages where the plaintiff has provided sufficient documentary proof to establish the judgment amount.") (citation omitted).

### III. ANALYSIS

Autumn Wind argues that its allegations adequately demonstrate entitlement to damages for both of its claims. [DE 98 at 1359]. The motion for default judgment requests $7,100,000 under the loan documents; $6,373,776.40 in interest; $3,550,000 under the unsecured promissory note; $987,000 in attorney's fees; $4,700 in court costs; and $1,775,000 representing an "exit fee" under the loan agreement. [*Id.* at 1360].

**1. Prerequisites**

Before contemplating default judgment, the court should ensure that jurisdiction exists; that service was accomplished. *Allstate Ins. Co. v. Das*, 86 F. Supp. 3d 716, 726 (E.D. Mich. 2015).

a. Jurisdiction

"In order to render a valid judgment, a court must have jurisdiction over the subject matter and the parties . . . ." *Allstate*, 86 F. Supp. 3d at 726 (citing *Antoine,* 66 F.3d 105).

A district court without subject-matter jurisdiction lacks power to adjudicate the case before it. *Herr v. U.S. Forest Serv.*, 803 F.3d 809, 813 (6th Cir. 2015); *accord* Fed. R. Civ. P. 12(h)(3). Here, Autumn Wind invokes the Court's diversity jurisdiction. [DE 24 at 320]. A federal court has such jurisdiction where the amount in controversy exceeds $75,000 and "complete diversity exists," meaning "the plaintiff[] comes from a different State from each of the defendants." *Evanston Ins. Co. v. Hous. Auth. of Somerset*, 867 F.3d 653, 656 (6th Cir. 2017); *accord* 28 U.S.C. § 1332. The amended complaint asserts that the amount in controversy exceeds

7

$75,000 and that complete diversity exists. [*Id.* at 319–20, 334]. Since the Clerk has entered default [DE 97], those "jurisdictional averments" are deemed admitted. *Ford Motor*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citing *Visioneering Construction v. U.S. Fid. and Guar.,* 661 F.2d 119, 124 (6th Cir. 1981)). Therefore, the Court possesses subject-matter jurisdiction over this case.

The Court also must possess personal jurisdiction over Siegel and the Company Defendants. *See Allstate Ins.*, 86 F. Supp. 3d at 726. According to the amended complaint, Siegel was domiciled in Kentucky at the time of his death; the Company Defendants are foreign limited liability companies with Kentucky members. [DE 24 at 319–20]. The Court possesses general personal jurisdiction over Siegel or his estate. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."). No similar consensus exists regarding limited liability companies.[1] But there is no need to reach that issue here. The Company Defendants, like Siegel, waived service through their former counsel located in Louisville, Kentucky. [DEs 13–16]. Later, they consented to transferring the case to this District. [DE 26]; *accord* 28 U.S.C. § 1404(a). And they litigated the case [*e.g.,* DE 49] without challenging personal jurisdiction. Therefore, this Court's personal jurisdiction over each defendant has been established. *See Ford Motor*, 441 F. Supp. 2d at 845.

---

[1] A corporation is "at home" in at least its "place of incorporation" and "principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137, 139 n.19 (2014). For unincorporated entities, some courts make a similar inquiry, while others look to the citizenships of each member or partner. *Compare In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1139 (S.D. Cal. 2018), *with Head v. Las Vegas Sands, LLC*, 298 F. Supp. 3d 963, 976 (S.D. Tex. 2018), *aff'd*, 760 F. App'x 281 (5th Cir. 2019). It is unclear from the amended complaint where the Company Defendants are headquartered.

      b. <u>Service</u>

Siegel and the Company Defendants indisputably have appeared in the action. *See H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970). Therefore, they "must be served with written notice" of Autumn Wind's motion. Fed. R. Civ. P. 55(b)(2); *see also Antoine*, 66 F.3d at 110. "A party's failure to appear or be represented at any stage of the proceedings following an initial appearance does not affect this notice requirement." 10A Wright & Miller, Federal Practice & Procedure § 2687 (4th ed.). However, the written notice "need not be in any particular form." 10A Wright & Miller, Federal Practice & Procedure § 2687 (4th ed.); *see also Wilson*, 564 F.2d at 369. Furthermore, a party "cannot prevent the entry of default judgment" by making itself "impossible to contact." *Fla. Physician's Ins. v. Ehlers*, 8 F.3d 780, 784 (11th Cir. 1993). Notice is adequately attempted by providing written notice of the request for default on defendant at, for example, "addresses on file with the district court" or "the same address at which [the plaintiff] had contacted [the defendant] previously." *Id.*

Here, there can be no doubt that the Defendants were on notice of the motion for default because they were specifically provided notice by the Court of the requested default in its order from the show cause hearing. That order was served by the Court via CM-ECF but also all mail and electronic mail addresses on file with the District Court.

As the specific form of the written notice need not be prescribed, the Court finds that the Court's own order sent to all available mail and electronic mail addresses on file with the District Court is sufficient to notify all unrepresented parties of the request for default judgment. *See* Fed. R. Civ. P. 5 (b)(2).

9

 2. **Default Judgment**

 a. <u>Liability</u>

Autumn Wind maintains claims of (I) fraud against Siegel and (II) tortious interference against both Siegel and the Company Defendants. [DE 24 at 331–33].

As stated above, on September 24, 2018, Autumn Wind made a $6,800,000.00 loan to Insight as borrower and ITH as guarantor (the "Initial Term Loan"). [DE 24 at 321-22; DE 24-2]. According to the Initial Term Loan, upon an Event of Default (defined therein), Autumn Wind may declare all Obligations immediately due and payable and those Obligations shall accrue interest at a default interest rate of 17.5%. [DE 24-2]. In addition, upon an Event of Default, the Exit Fee (defined therein) shall become due and payable, which shall be equal to 25% of the principal amount of the loan. [*Id.*]. The Initial Term Loan contained two relevant covenants: (i) at the time of the loan, Insight represented that it did not have any outstanding Indebtedness (defined therein) (the "Indebtedness Representation") [DE 24 at 322], and (ii) so long as Autumn Winds' loan to Insight was outstanding, Insight would not incur any additional debt without first obtaining Autumn Winds' consent (the "Indebtedness Covenant" and together with the Indebtedness Representation, the "Covenants") [*Id.* at 322-23]. Breach of the Covenants is an Event of Default under the Initial Term Loan. [*Id.* at 323]. In connection with the Initial Term Loan, Insight also executed an unsecured promissory note dated September 24, 2018, in the principal amount of $3,400,000.00 (the "Initial Unsecured Note"). [*Id.*; DE 24-3].

On December 19, 2018, Autumn Wind agreed to an additional term loan issued to Insight in the amount of $300,000.00 (the "Additional Term Loan"). [DE 24 at 324-25; DE 24-4]. The Additional Term Loan provided that "[i]nterest shall accrue (x) on the principal amount of the Initial Loan from (and including) the Closing Date until the payment in full of the Loan and (y) on

the principal amount of the Additional Loan from (and including) the First Amendment Effective Date until the payment in full of the Loan." [*Id.*]. Moreover, the Additional Term Loan amended the Initial Unsecured Note and restated the amount payable thereunder to $3,550,000.00 (the "Restated Unsecured Note"). [DE 24 at 325]. The Additional Term Loan was further evidenced by an Amended and Restated Promissory Note dated December 19, 2019 executed by Insight in favor of Autumn Wind in the amount of $7,100,000.00 (the "Term Note" and together with the Initial Term Loan, the Initial Unsecured Note, the Additional Term Loan), and the Restated Unsecured Note, the "Loan Documents"). Insight failed to pay and defaulted under the Loan Documents on May 31, 2019.

In 2019, Insight and ITH each commenced a voluntary case under chapter 11 of the Bankruptcy Code, administered jointly in the U.S. Bankruptcy Court for the Western District of Kentucky and captioned In re Insight Terminal Solutions, LLC, et al., Case No. 19-32231 (the "Bankruptcy Action"). During the Bankruptcy Action, Autumn Wind learned—for the first time—that Insight, pursuant to Defendant Siegel's direction and control as executed by and through each of the Defendants, breached the Covenants to induce Autumn Wind into entering into the Initial Term Loan and amendments to the same (including without limitation the Additional Term Loan and the Term Note). [DE 24 at 319]. At the time Autumn Wind and Insight entered into the loan agreement, Insight had already issued a promissory note to Defendant Cecelia, another Siegel-affiliated entity which the Defendants did not disclose to Autumn Wind at the time of contracting (the "Cecelia Note"). [*Id.*] Moreover, during the loan term, Insight issued additional promissory notes to Defendant Cecelia and incurred obligations to two other Siegel-affiliated entities, Defendant Halas (the "Halas Claim") and Defendant Oasis (the "Oasis Claim") without obtaining Autumn Wind's consent—a violation of Insight's contractual obligations. [*Id.*] The Defendants'

concealment of Insight's violation of the Covenants provided the Defendants, which share an unmistakable identity of interest with Insight, an unfair advantage and allowed Defendant Siegel to preserve his equity interest in Insight. [*Id.* at 328]

The Court has reviewed the Complaint, Amended Complaint, and accompanying attachments as well as the request for default judgment. Accepting the facts in the Amended Complaint and those reiterated in the application for default judgment as true, and having already considered many of the merits on a motion to dismiss as well as in the appellate process, this Court finds that Autumn Wind's complaint states sufficient and meritorious claims against Defendants to demonstrate that Autumn Wind is entitled to damages stemming from (i) Siegel's alleged fraudulent misrepresentations in connection with the Autumn Winds' loan to Insight, and (ii) the Defendants' alleged tortious interference with Insight's contractual obligations to Autumn Wind. Thus, the Court finds it appropriate to enter judgment in favor of Autumn Wind on liability.

### b.  Compensatory Damages

As noted, Autumn Wind has obtained from the Clerk an entry of default as to all defendants. [DE 97]; *accord* Fed. R. Civ. P. 55(a). While that default is effectively an admission of liability, it is not an admission of damages. *Long v. Morgan*, 451 F. Supp. 3d 830, 832 (M.D. Tenn. 2020) (citing *Antoine*, 66 F.3d at 110). Autumn Wind must establish what it is entitled to recover. *See id.* at 832–33; *see also Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009). The civil rules "require that the party moving for a default judgment must present some evidence of its damages." *Mill's Pride, L.P. v. W.D. Miller Enters., LLC*, No. 2:07-cv-990, 2010 WL 987167, at *1 (S.D. Ohio Mar. 12, 2010) (citations omitted). The court may also rely on affidavits and other documentary evidence to determine the appropriate damages amount. *See Hart*, 2018 WL 1914295, at *2 ("The court, in its discretion, need not hold a hearing on the motion, but may

determine on the filings that default judgment on the claims is proper, and may fix damages where the plaintiff has provided sufficient documentary proof to establish the judgment amount."), see also *Bailey v. United Recovery Solutions, Inc.*, 3:17-cv-00350-DJH-DW, 2018 WL 4868990, at *2 (W.D. Ky. July 12, 2018).

Liquidated damages "are those made certain or fixed by agreement of parties, or by operation of law." *Weaver v. Caldwell Tanks, Inc.*, 190 F. App'x 404, 414 (6th Cir. 2006). Liquidated damages are "of such a nature that the amount is capable of ascertainment by mere computation, can be established with reasonable certainty, can be ascertained in accordance with fixed rules of evidence and known standards of value, or can be determined by reference to well-established market values." *Weaver,* 190 F. App'x at 414 citing *3D Enterprises Contracting Corp. v. Louisville and Jefferson County Metro. Sewer Dist.,* 174 S.W.3d 440, 450 (Ky.2005) (quoting 22 Am.Jur.2d DAMAGES § 469 (2004)). An unpaid fixed contract price is an example of liquidated damages. *Id*. Another example of liquidated damages is a failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value in a breach-of-contract action. *Id*.

Based upon the Hirsh Declaration, Autumn Wind requests default judgment against the Defendants as follows: (a) compensatory damages in the amount of the all Obligations (as defined in the Initial Term Loan) under the Initial Term Loan, the Additional Term Loan, and the Term Note in an amount not less than $7,100,000.00 exclusive of all interest, fees, and costs; (b) interest on the unpaid balance, to the full extent permitted by the Initial Term Loan (Interest is calculated using an outstanding amount under the Term Loan of $7,100,000.00 and a default date of May 31, 2024 at 17.5% interest); (c) compensatory damages in the amount of $3,550,000.00 under the Restated Unsecured Note; (d) an award of costs and expenses incurred in this litigation, including

attorneys' fees and court costs; (d) an award of an exit fee in an amount of $1,775,000.00; and (e) any such other and further relief as the Court may deem just and proper.

Autumn Wind's damages of $7,100,000.00 are under the Initial Term Loan and amendments, damages of $3,550,000.00 under the Restated Unsecured Note, and damages of $1,775,000.00 for an exit fee under the Initial Term Loan that is equal to 25% of the principal amount of the loan, are readily ascertainable based on the terms of the Initial Term Loan and amendments and Restate Unsecured Note attached to Autumn Wind's amended complaint. [DE 24-2, DE 24-3, DE 24-3, DE 24-4, DE 24-5, DE 24-6].

Autumn Wind also seeks interest owed on the unpaid balance under the Initial Term Loan. This amount is also readily ascertainable although there may be a minor typo in Autumn Wind's motion. Autumn Wind calculates interest owed under the Term Loan using the outstanding amount under the Term Loan of $7,100,000.00 and a default date of May 31, 2024. [DE 98 at 1358, n.7]. However, Autumn Wind calculated interest at the time of its motion based on 1,847 days in default at 17.5% interest, totaling $6,373,776.40 in interest. Interest calculated from May 31, 2024 would only be based on 369 days at this time and appears to be a typographical error as May 31, 2019 is the date of default based on the facts alleged and the Initial Term Loan. [DE 98 at 1356]. The Court requests the formula for calculating unpaid interest under the Term Loan so that the Court can calculate the unpaid interest as of the date of the forthcoming default judgment, which would be in addition to any interest in the future provided for by the Term Loan.

In sum, Because Autumn Wind's damages are liquidated and readily ascertainable, the Court finds no need for a hearing and finds it appropriate to enter judgment in favor of Autumn Wind for these damages.

      c.   <u>Attorney's Fees and Court Costs</u>

In addition to damages, interest, and a liquidated penalty referred to as an "exit fee," Autumn Wind seeks to recover $987,000 in attorney's fees and $4,700 in court costs. [DE 98 at 1360]. Autumn Wind states that its counsel's declaration is the only "[s]upport for the amount and calculation of the costs and expenses incurred in this litigation." [DE 98 at 1360]. But the declaration provides no calculations; it only restates the amounts sought. [DE 98 at 1366].

As an initial matter, Autumn Wind's motion does not identify in its motion or the Hersch declaration any authority for an award of attorney's fees. The "general rule" is that "absent statute or enforceable contract, litigants pay their own attorneys' fees." *Alyeska Pipeline Serv. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975); *see also Wesco Ins. v. Roderick Linton Belfance, LLP*, 39 F.4th 326, 336–37 (6th Cir. 2022). A motion for fees must specify what entitles the movant to an award. Fed. R. Civ. P. 54(d)(2)(B); *see also Hunt v. Hadden*, 159 F. Supp. 3d 800, 805 (E.D. Mich.), *aff'd,* 665 F. App'x 435 (6th Cir. 2016). It appears that Autumn Wind is contractually entitled to attorney's fees under the Initial Term Loan [DE 24-2 at 345, 353, 369, 378] and Promissory Note [DE 24-5 at 402].

Also, Autumn Wind has provided no evidence of attorney's fees for the Court to evaluate. Autumn Wind must offer documentation showing its requested amount of fees. And it must further submit documentation "in support of the hours charged," which "must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation" at hand. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (detailing the "lodestar" approach—"the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate").

15

Autumn Wind, in short, is directed to file the proper documentation in accordance with this Circuit's standards for awarding reasonable attorneys' fees. *See Imwalle*, 515 F.3d at 553.

Similarly, Autumn Wind provides no particularized support for its requested court costs. While costs usually "should be allowed to the prevailing party," Fed. R. Civ. P. 54(d)(1), before awarding them, "the court must determine that the expenses are allowable cost items and that the amounts are reasonable and necessary," *Johnson v. Metro Gov't of Nashville & Davidson Cty.*, 502 F. App'x 523, 543 (6th Cir. 2012) (cleaned up); *see also* LR 54.4 ("The prevailing party must file a Bill of Costs . . . ."). "The costs that courts may tax under Rule 54(d)(1) are confined to the costs itemized in 28 U.S.C. § 1920." *In re Cardizem CD Antitrust Litig.*, 481 F.3d 355, 359 (6th Cir. 2007). "[T]he decision whether to award costs ultimately lies within the sound discretion of the district court." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 377 (2013) (discussing Rule 54).

Ordinarily, parties may seek to recover their fees and costs after judgment is entered. Fed. R. Civ. P. 54(d); LR 54.3–.4. Here, for the sake of efficiency, the Court will withhold entry of final default judgment and require Autumn Wind to provide any additional support for its requested fees and costs, after which the Court will enter a final default judgment in favor of Autumn Wind consistent with the above analysis.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

1. Autumn Wind's motion for default judgment [DE 98] is **GRANTED.** The Court will issue separate final default judgment in favor of Autumn Wind in the amounts set forth above after receipt and review of the information requested.

2. Autumn Wind **SHALL** file any supplemental support for its requested fees and costs by **Friday, June 20, 2025**.

16

3. Autumn Wind **SHALL** also file a supplement providing the formula for interest owed and an updated proposed Default Judgment by **Friday, June 20, 2025**.

*Rebecca Grady Jennings, District Judge*
United States District Court

June 5, 2025